### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

|  |  |  |
|---|---|---|
| PATRICK SEABORN ZIMMERMAN<br>a/k/a PATRICK ZINNERMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | FILE NO.   4:16-cv-79-HLM |
| | ) | |
| THE CITY OF ROME, | ) | |
| GEORGIA, a municipal corporation | ) | |
| EDWARD COX, individually, | ) | |
| JON SISSON, individually, | ) | |
| RANDY GORE, individually | ) | JURY TRIAL DEMANDED |
| CATHY TAYLOR, individually, | ) | |
| CHRISTOPHER PARTON, individually, | ) | |
| JOHN BROOKS, JR, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Patrick Seaborn Zinnermon a/k/a Patrick Zimmerman ("Plaintiff"), by and through his attorneys, and hereby files his Complaint for Damages against the above-named Defendants and in further support of his Complaint respectfully shows the Court as follows:

### PARTIES, JURISDICTION AND VENUE

1.

At all times relevant to this Complaint, Plaintiff was a natural person, citizen

and resident of the State of Georgia, residing within this judicial district in Floyd County, Georgia. Plaintiff was, at the time of the events giving rise to this action, a resident of the City of Rome, Georgia, and a citizen of the State of Georgia and the United States of America.

2.

At all times relevant hereto, Defendant Edward Cox ("Cox") was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in his capacity as a police officer with the City of Rome Police Department ("RPD") and as a member of the Rome-Floyd Metro Task Force ("Task Force"). Defendant Cox is being sued in his individual capacity.

3.

At all times relevant hereto, Defendant Jon Sisson ("Sisson") was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in his capacity as a police officer employed by RPD and as a member of the Task Force. Defendant Sisson is being sued in his individual capacity.

4.

At all times relevant hereto, Defendant Cathy Taylor ("Taylor") was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in her capacity as a police officer employed by Floyd County Police Department (FCPD) and as a member of the Floyd-Rome Metro Drug Task Force.

Defendant Taylor is being sued in her individual capacity.

5.

At all times relevant hereto, Defendant Christopher Parton ("Parton") was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in his capacity as a police offer employed by the Floyd County Sheriff's Office ("FCSO"). Defendant Parton is being sued in his individual capacity.

6.

At all times relevant hereto, Defendant John Brooks, Jr. ("Brooks") was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in his capacity as a deputy sheriff employed by FCSO. Defendant Brooks is being sued in his individual capacity.

7.

At all times relevant hereto, Defendant Randy Gore was a citizen of the United States and a resident of the State of Georgia and was acting under color of law in his capacity as an investigator for Rome Police employed by RPD. Defendant Randy Gore is being sued in his individual capacity.

8.

The City of Rome, hereinafter "Defendant City" is a Georgia municipal corporation and is the legal entity responsible for itself and for the Rome Police

Department. This Defendant is also the employer of the individual Defendant and is a proper entity.

9.

This action arises under the laws of the United States, including Article III, Section 1 of, and the Fourth and Fourteenth Amendments to, the United States Constitution, and the Georgia Constitution. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Georgia constitution, and Georgia state statutory and common law. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

10.

Venue is proper in the District Northern District of Georgia, Rome Division, pursuant to 28 U.S.C. § 1391(b) because at least one defendant resides in this judicial district and all defendants are residents of Georgia and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FATCUAL ALLEGATIONS

### 11.

On June 27, 2013 Defendants Cox, Taylor and Sisson, while on duty with RPD, met with an unnamed Confidential Informant ("CI") to arrange undercover drug buys from suspected drug sellers. Defendants Cox, Taylor and Sisson searched the CI's vehicle and his person and a camera was placed on the CI so Defendants Cox, Sisson and Taylor could observe any potential drug sales from afar. Defendants Cox, Taylor and Sisson gave the CI an unknown amount money to purchase drugs from the potential sellers.[1]

### 12.

The CI performed drug sales near a QuikMart at the intersection of Maple and East 20th Street in the City of Rome, Georgia while Defendants Cox, Sisson and Taylor watched and recorded the transactions.

### 13.

On one occasion, an unknown black male ("Correct Suspect") approached the CI's truck, and sold $20 worth of cocaine to the CI. Defendant Cox could not identify the Correct Suspect because, in Defendant Cox's words, "I was positioned

---

[1] Many of the facts set forth herein were obtained and documented by RPD Deputy Police Chief Travis Goss ("Goss") during his investigation into the arrest of Plaintiff at issue in this case.

in the parking lot across the street." Defendant Cox believed that the Correct Suspect was more or less like a mule for a known drug dealer, Lucas Waddell. It is unknown where Defendants Sisson and Taylor positioned themselves during the surveillance of these drug buys.

14.

The camera placed on the CI captured video showing that the Correct Suspect walked with a profound limp as he approached the CI's truck. During the drug transaction, the Correct Suspect stated to the CI, "*I only have one leg*." Additionally, the Correct Suspect was tall and thin, but had no facial hair and a wavy like process on the hair on his head. The entire video of the drug buy obtained from the CI's camera was taken by Defendants after the controlled buy and saved to a compact disk and retained by RPD and later the District Attorney for Floyd County, Georgia. This video was readily available to any law enforcement officer or jailer who wished to view it, including each of the Defendants.

15.

Defendants Cox, Sisson and Taylor each met with the CI again after the drug buys. Defendant Cox searched and retrieved the evidence, and either Defendant Cox or Defendant Taylor saved the videos of the drug buys onto a CD.

16.

Defendants Cox, Taylor and Sisson were able to identify of each of the individuals who purchased drugs from the CI on June 27, 2013 except for the Correct Suspect. As to the Correct Suspect, Defendant Cox stated, "or whoever he was. I still don't know his name. We did not I.D. him, and I knew the other one was Marquez May."

17.

Subsequent to the drug buy on June 27, 2013, Defendant Cox transferred to patrol duty, and Defendant Sisson took over Defendant Cox's case files, including the case involving the Correct Suspect on June 27, 2013. During Defendant Cox's transfer, Defendant Cox told Defendant Sisson, that he (Cox) had identified Marquez May. "I had pictures in there and told Jon [Sisson] that was him." Defendant Cox stated he and Defendant Sisson watched the video of the drug buys. Defendant Cox later stated, "I have actually watched that video numerous times and I.D Marquez May and gave him (Sisson) the other case of the unknown black male."

18.

While on patrol on before September 17, 2013, Defendant Cox observed a black male pushing a bicycle with a limp. Defendant Cox stated, "I knew that the guy at the store that we did the buy from [Correct Suspect] walked kinda funny. And his features favored the guy in the video from what I remembered, because I hadn't watched the video in a month or so." Defendant Cox stopped the unidentified black

male [Plaintiff]. Plaintiff voluntarily gave Defendant Cox his name and information. At the time Defendant Cox stopped Plaintiff before September 17, 2013, Plaintiff was 61 years old, had a mustache, had greying hair, was 6'2" tall and had slender build, weighing approximately 190 pounds. During Defendant Cox's stop of Plaintiff on before September 17, 2013, Defendant Cox did not ask Plaintiff why he was limping or whether he only had one leg.

19.

Before September17, 2013, Defendant Cox called Defendant Taylor and told her, "hey I'm out with this guy, he resembles and has similarities to the guy in the video [June 27, 2013 drug buy video]." Defendant Cox asked Defendant Taylor to pass on the information to Defendant Sisson.

20.

According to Defendant Cox, on September 17, 2013, Defendant Sisson showed Defendant Cox a photograph of Plaintiff and asked him to confirm it was the person he had stopped on September 17, 2013 and Defendant Cox confirmed Plaintiff (the person depicted in the photograph) was the person he stopped. Defendant Cox claims Defendants Sisson and Cox had no further discussion concerning the identification of the suspect.

21.

According to Defendant Cox, he is not "100 percent sure" about the pictures, but claims, [b]ut telling John [Sisson], hey that is the guy, go type a warrant, I know I did not do that."

22.

During questioning as part of RPD's internal investigation, Deputy Chief Goss read the following written statement from Defendant Sisson to Defendant Cox:

> Officer Cox made contact with me and stated that he had made contact with his subject that the CI had bought from and had I.D him as Patrick Seaborn Zimmerman. Officer Cox then made contact with me and to go ahead and take warrants for the subject. He said act on good faith from another officer, and former investigator that trained me, I ran Mr. Zimmerman through the UCIC and Leads where I got a pictures of Mr. Zimmerman. I showed Officer Cox the picture I had and he stated yes, that was the guy he had spoken with.

23.

In response, Defendant Cox replied, "I did not even call John [Sisson]. See, I spoke with Cathy [Taylor]. I told her, you give this name to John. He has similarities of the guy that did the controlled substance buy at the store, the one we didn't have I.D." Thus, Defendants Cox and Sisson gave conflicting statements concerning the method and manner by which information about Plaintiff was shared between them.

23.

During questioning as part of RPD's internal investigation, Deputy Chief Goss showed the June 27, 2013 drug buy video to Defendant Cox, to which he

responded, "actually, the video is clearer than any still picture you got." Deputy Chief Goss then took the September 17, 2013 picture of Patrick Zimmerman and compared it to the video of the Correct Suspect.

24.

In response, Defendant Cox stated, "I assume [the picture] was the one John had in September of '13. And if you take a look at this guy [Plaintiff], he does have similarities, but if you look at this guy [Correct Suspect], he's got no facial hair. In every one of these pictures of Mr. Zimmerman, he's got facial hair. And this guy down here making the sell, he appears to have bigger lips. And that guy [Correct Suspect] that made the sell has got a profound limp. And he [Correct Suspect] said he didn't have but one leg."

25.

During RPD's internal affairs investigation, Deputy Chief Goss asked Defendant Cox where he was positioned during the June 27, 2013 drug buy, and Defendant Cox changed his story. As noted above, originally Defendant Cox stated he was in the parking lot across the street and could not identify the Correct Suspect, but when asked by Goss again, he stated, "I think we were at the Rite–Aid. I could see male already known to law enforcement drug suspect and [the Correct Suspect] pretty good." I seen them [the male already known to law enforcement drug suspect,

- 10 -

and the Correct Suspect] going into the store and talking." Deputy Chief Goss then asked whether Plaintiff did the sell, and Defendant Cox told Goss no.

26.

Deputy Chief Goss then stated to Cox, "Okay, Proper procedure, then when you follow up on an investigation, you make every attempt to make sure that you're right." This guy [Correct Suspect] he's got some type of wavy something in his hair. Mr. Zimmerman all the pictures I got don't look like that he's never done nothing to his hair. Now, Mr. Zimmerman's ears are a little cropped right there, but I don't think they look like these [Correct Suspect's] ears. And if you take a look at the one that you apparently showed, and looking at them, that's a better to I.D. him by. . . .And, you know it's not our practice to put people in jail that don't need to go. And doing a follow up investigation, I would have least made all these pictures off of it and tried to make a positive I.D. before I went a took a warrant."

27.

Defendants Cox, Sisson and Taylor never showed the September 17, 2013 picture of Plaintiff obtained by Cox to the CI to determine whether or not Plaintiff had any connection to the drug buy in which the CI was involved on June 27, 2013 and made no attempts to compare any photograph of Plaintiff to any still photographs of the Correct Suspect or any video footage. Defendants Cox, Sisson and Taylor made no effort whatsoever to reconcile the information on the video that

- 11 -

the Correct Suspect may have only had one leg when Plaintiff clearly had both legs. At times during their involvement in the case, Defendants Cox, Sisson and Taylor knew that the information each provided in the investigation concerning the Correct Suspect's identity would be used to obtain arrest warrants for Plaintiff, and that those warrants would lead to Plaintiff's arrest and subsequent confinement.

28.

Nonetheless, on September 19, 2013 Defendant Sisson applied for and obtained warrants for Plaintiff's arrest on nothing more than Cox's confirmation that the man in the photo was the same that was stopped by Cox. There was absolutely no linkage between Plaintiff and the crime and there was no meaningful linkage between Defendants Cox, Sisson and Taylor regarding the identification of Plaintiff or the Correct Suspect. At the time he sought the arrest warrants, Defendant Sisson knew that the warrants would lead to Plaintiff's arrest and subsequent confinement.

29.

The September 19, 2013 arrest warrants state only that the, "subject did in fact have in his possession and in control of a quantity of crack cocaine." The warrants do not give any identifying information for Plaintiff or the Correct Suspect.

Notably, the warrants do not contain such unique information as the Correct Suspect *admittedly having only one leg.*

30.

On April 4, 2014, Defendant Parton arrested Plaintiff pursuant to the September 19, 2013 arrest warrants obtained by Defendant Sisson on charges of V.G.C.S.A. 16-13-30(a) possession, V.G.C.S.A 16-13-30(b) possession of cocaine with the intent to distribute, and V.G.C.S.A. 16-13-30(b) sale of cocaine.

31.

After Plaintiff was arrested, his brother-in-law, visited Plaintiff in the Jail and spoke to Defendant John Doe 1 and specifically asked Defendant John Doe 1 to confirm the identification of Plaintiff because Plaintiff had been arrested in error and they had the wrong person in custody. Despite receiving this information, Defendant John Doe 1 did nothing to investigate the issue of Plaintiff's identity or his claim of innocence and ignored the family's plea of innocence.

32.

After Zimmerman's arrest on April 4, 2014, Plaintiff was denied bond because there was an ongoing investigation.

33.

Defendant Cox testified at the grand jury, which was convened on July 25, 2014. Prior to doing so, however, he noted, "the case file was not complete. "So, I went down there and asked John [Sisson] several times, it had to be at least five times, can you please watch the video and complete the case file because all that is in there is he [Zimmerman] sold a quantity of cocaine and warrants were taken. I said, there's no details or anything. Can you watch it [video] and finish the report."

34.

Despite his apparent concern about testifying with an incomplete file and his doubts about whether Plaintiff was the same man who did the drug buy, Defendant Cox testified before the grand jury anyway—and without a copy of the video of the drug buy at issue.

35.

Upon information and belief, Defendant Cox did not share information with the grand jury that Defendant Cox had not told Defendant Sisson to obtain arrest warrants on Plaintiff or that a video of the actual drug buy existed. No one showed the grand jury the videotape of the drug buy. Defendant Cox did not address his concerns about the file with either RPD or the Floyd County District Attorney's office about his concerns before presenting the case to the Grand Jury.

36.

Since Defendant Sisson was the lead officer on the file, it is still not clear why Defendant Sisson did not testify at the grand jury, particularly since he had both the photo of Plaintiff and the video of the drug buy and could have easily confirmed prior to indictment that the two individuals were different people.

37.

When asked about his presentation of the case to the grand jury, Defendant Cox responded, "Well the Grand Jury was, you know, when you go to the Grand Jury it's not a lot of facts. It's just a point, it's just the point..little facts to the point. When I went to the Grand Jury, I just pretty much..said what was on the start of the video, searched CI, searched and then I did video, searched CI and went to store and sold it." Deputy Chief Goss asked "you didn't have the video to even show at Grand Jury?" Defendant Cox responded, " No."

38.

On July 25, 2014, based on Defendant Cox's testimony, Plaintiff was indicted by the Floyd County Grand Jury by way of true bill indictment for three counts of V.G.C.S.A. 16-13-30(a) possession, V.G.C.S.A 16-13-30(b) possession of cocaine with the intent to distribute, and V.G.C.S.A. 16-13-30(b) sale of cocaine.

39.

On August 1, 2014, when Plaintiff had already been incarcerated for 119 days, Plaintiff's criminal defense attorney requested a bond for Plaintiff.  In response, the

District Attorney offered him a plea of a 10-year sentence with five (5) years to serve in prison. Plaintiff rejected the plea offer, and requested a bond hearing.

40.

Plaintiff sat in the Jail for just over six months from April 4, 2013 through October 8, 2013 for a total of 188 days, when he was finally offered a bond.

41.

After the Floyd County Assistant District Attorney in charge of the file, Kevin Salmon, reviewed the videotape and within minutes was able to confirm Plaintiff and the Correct Suspect were different people.

42.

On October 22, 2013, 14 days later after obtaining a bond, the Floyd County District Attorney *nolle prosequied* all of the charges against Plaintiff and neither the charges nor the case have since been re-opened.

43.

On numerous occasions following his arrest, Plaintiff pleaded with Defendants John Does 2-5 and Jane Does 2-5 that he was innocent, that he had been arrested in error, and asked Defendants John Does 2-5 and Jane Does 2-5 investigate his claim of innocence. Defendants John Does 2-5 and Jane Does 2-5 did nothing

to investigate the issue of Plaintiff's identity or his claims of innocence and ignored Plaintiff's continued pleas.

44.

Plaintiff also wrote the Clerk of Superior Court of Floyd County, Ms. Barbara Penson, twice. The first time he asked who was his public defender, when he would get bond, and what stage was his case in. The second time he wrote, he asked, when his public defender would come see him, what stage his case was in, and informed her he has been in jail with no bond since his arrest.

45.

RPD's internal investigation has since revealed that Defendants Sisson and Cox failed to do sufficient follow-up investigation in an attempt to identify the Correct Suspect before arrest warrants were obtained.

46.

Defendants Sisson, Cox and Taylor did not view the drug buy photos and videos from June 27, 2013 sale to compare with Plaintiff's September 17, 2013 photograph even though it was freely available to each of them.

47.

- 17 -

Defendant Sisson, Cox and Taylor did not have the CI who did the drug buy review photos of Plaintiff or the Correct Suspect in the June 27, 2013 video. In fact, Defendant Cox stated, "we wouldn't even be here [in an investigation] now if he [Defendant Sisson] took that September 17, 2013 picture of Zimmerman and watched that video, and can see it plain as day. I can see it. Anybody can see it, that's not the same guy (Zimmerman)."

48.

In connection with Plaintiff's arrest and incarceration, Deputy Chief Goss has stated, "well the bottom line is we got a guy.. that had a warrant took for him, investigation wasn't complete. Basically, sloppy."

49.

*Custom, Practices, Policies and Procedures*

Plaintiff's arrest resulted from a policy, practice and/or custom of the City of Rome of allowing, encouraging and/or rewarding officers working on the Floyd Metro Drug Task Force for making arrests in drug cases without properly investigating the suspect's identity. For example, in *Brown v. Unknown Members of the Rome/Floyd Metro Drug Task Force et al.*, Defendant Cox of RPD was tasked to the Floyd-Metro Drug Task Force and did controlled drug buys in 2012 just eight days before the June 27, 2012 buys in the Zimmerman case. He contributed to the

misidentification of the suspect, and, like here, he presented to the Grand Jury incomplete information, and warrants were taken.

50.

Lisa Renee Brown, a single mother of a 10 year old was arrested on January 14, 2013, and taken to jail where she would spend 30 days. Again, the same Assistant District Attorney in the Zimmerman case, Kevin Salmon, alerted Officer Cox that he had the wrong person arrested. It was later determined that the true suspect was Elaine Renae Brown. The case was *nolle proequied* by the same Assistant District attorney in the instant case, Kevin Salmon.

51.

The facts of the *Brown* case are as follows, on June 19, 2012, Defendants Cox and Greenawalt as Members of the Rome/Floyd Metro Drug Task Force participated in an undercover controlled buy drug operation in Rome, Georgia. The events of June 19, 2012 were videotaped by or at the direction of Defendants Cox and Greenawalt.

52.

According to pleadings associated with the Federal Complaint 4:15-CV- 0024-HLM, the Lisa Renee Brown was at home in Summerville, Georgia during the undercover operation conducted by Rome Police Officers Edward Cox and Mark Greenawalt on June 19, 2012 in Rome, Georgia.

53.

- 19 -

Officers Edward Cox and Mark Greenawalt had only video, from the CI to document of who was at the drug buy on June 19, 2012. From Officer Cox deposition taken December 1, 2015, pp. 21, ln. 5-12., in connection to case 4:15-CV-00024-HLM, he states;

> "Once I met with the informant that day, we got the name she gave me. We have a program. I don't even believe it's in effect anymore, it's called Eagle, and what it is, it's a jail booking photos and you search by name or address, and that was the only Renee Brown that I knew. That was the only one in the booking when I pulled that photo."

54.

Further, Officer Cox stated, "I didn't know a Lisa Brown, so when I looked in Eagle, I found a Lisa Renee Brown. That is how I got the photo." Officer Cox showed his CI the picture from the Eagle search for identification purposes. Officer Cox states "I did not show any more photos" at that time.

55.

Officer Cox, responded to a question in his December 1, 2015, Deposition pp. 30, ln. 15-20., regarding:

> "Q. After your confidential informant gave this identification, did you make any further efforts to make sure you had the right person?

A. " I watched the video. I looked at the two females (the picture compared to the video), I took, the CI's..what she told me , and I made the arrest warrant."

56.

When Officer Cox was asked if he made any other effort to call or trace the telephone number he got for Renee Brown, Officer Cox stated " he did not recall. I am going to say, no." see *December 1, 2015, Deposition pp. 30, ln. 18-22*

When Officer Cox was asked:

Q.  Are you at all familiar with the P.O.S.T (Peace Officer Standards Training) standards for Photo array in the State of Georgia?
A. Officer Cox, I'm going to say no. I  can't explain it to you." December 1, 2015, Deposition pp. 54, ln. 21-24. The P.O.S.T suggest a minimum of six photos, Officer Cox only provided one photo to his CI and that photo was six years old.

57.

Officer  Cox was asked:
Q. "Did you testify that you had her (Lisa Renee Brown) on video, selling the drugs in the buy."
A. Officer Cox, "Yes, sir."
Q. Did you testify that you had a positive identification of Lisa Brown to the grand jury?
A. Officer Cox, "Yes."

58.

Officer Cox was asked,:

Q. "did you happen to share any information about your CI saying (about the picture of Lisa Renee Brown. "She must have lost weight? Did you share any of that with the grand jury?
A. Officer Cox answered, "No, sir."

59.

Based in part due to Officer Cox testimony, a true bill indictment was returned against Lisa Renee Brown sale of oxycodone, possession of oxycodone, and possession with intent to distribute oxycodone by a Floyd County Grand Jury on November 30, 2012. The arrest warrant was issued from the Grand Jury as a bench warrant against Lisa Renee Brown.

60.

Officer Cox later found out he had the wrong person arrested. Assistant District Attorney, Kevin Salmon informed Officer Cox of the mis identification. Kevin Salmon nolle pros the case against Lisa Renae Brown, This occurred after Lisa Rene Brown spent 30 days in jail. The real suspect from the June 19, 2012 buy was Elaine Renae Brown.

- 22 -

61.

During the December 1, 2015 Deposition pp. 47-48, Ln.25-6.,in connection with the *Brown* case, Officer Cox was shown the two photos of Lisa Renee Brown, and Elaine Renae Brown and was asked:

> Q. When you went back to your CI, are these the two photos you showed her (CI) in 2013.
> A. Officer Cox, "Yes, sir."
> Q. Okay did she have any trouble distinguishing between these two ladies in 2013?
> A. Officer Cox, "No, sir."
> Q. Okay, so it was clear to her that Exhibit 1, (picture) of Elaine Renae Brown, was the person who sold the drugs; correct?
> A. Officer Cox, "Yes, sir."

62.

Deputy Chief Goss, a supervisory police officer in the Rome City Police department had actual and constructive knowledge of factual situation of Lisa Renee Brown, and  Officer Cox's role in the mis identification and taking of warrants that lead to her 30 day incarceration. December 1, 2015 Deposition pp. 50

63.

Deputy Chief Goss, further showed his awareness of Officer Cox's role in the mis identification of Lisa Rene Brown case during the internal affairs interview of

Officer Cox, and his role in mis identifying and wrongful arrest of Patrick Zimmerman in April 4, 2014, which resulted in Mr. Zimmerman's 180 incarceration.

64.

The second case that is similar to the Zimmerman case and has like causation. Involves the City of Rome Police and Floyd County Police, *Brandon Carter v. Gore and J. Nelson.* Case number *13-11629.* Investigator Gore, is also the same investigator assigned to the Zimmerman case.

65.

Brandon R. Carter was arrested on February 8, 2011 for shoplifting at a Pawn Mart in Rome, Georgia. The warrant for his arrest was obtained on an affidavit by Randy Gore, a police officer with the City of Rome. Officer Gore's affidavit stated that Carter assisted a co-perpetrator "by distracting store employees while the co-perpetrator took possession of a diamond ring valued at $9,000.00." Carter spent more than sixty days in jail after his arrest before the charges were dismissed on motion by the state. *Carter* then filed a complaint against Officer Gore, J. Nelson, the deputy who arrested him, and the City of Rome stating claims pursuant to 42 U.S.C. § 1983 and Georgia law claims of illegal arrest, false imprisonment, and intentional infliction of emotional anguish.

66.

On April 15, 2011, Carter was indicted by a Floyd County grand jury on the charge of Theft by Shoplifting under O.C.G.A. Section 16-8-14. On January 11, 2012, an Assistant District Attorney for the Rome Judicial Circuit filed a Request for Nolle Prosse regarding Carter's Indictment. A Superior Court Judge singed the order on January 12, 2012.

67.

In the deposition of Investigator Gore, July 24, 2014 in connection with the *Carter* case. Inv. Gore explained his role in a case and how he was assigned to cases

He states:

"Well, after the patrol officer takes the initial incident report, those reports are forwarded electronically through our supervision. Our supervision makes a determination on whether or not a case gets assigned to an investigator. If so, them he assigns that case to particular investigator."

68.

Then Inv. Gore was asked:

Q. Did you take any recorded statements at all during your investigation for this incident?

A. Inv. Gore, No, I did not.

Inv. Gore then was asked:

Q. Did you take any written statements at all during your investigation for this incident?

A. Inv. Gore, No, I did not.

69.

In the unpublished 11th Circuit Court Appeals Decision reversing the dismissal of *Gores* Complaint in part:

"Gore had no witness accounts to place Carter at the scene; Gore had no evidence that Carter had ever been to Rome, Georgia, let alone the Pawn Mart; Gore never found any information to connect Carter with the crime charged; and the state voluntarily decided not to prosecute Carter. He also quotes Gore's entire affidavit:

"The Accused did commit the above offenses with the intent to appropriate merchandise to his own use without paying for the merchandise. He assisted a co-perpetrator by distracting store employees while the co-perpetrator took possession of a diamond ring valued at $9,000.00. Concealed the ring on his person and left the store without paying for the ring."

Further, Appellees argued, Randy Gore *could have* had fingerprint evidence, video surveillance, or other similar evidence linking Carter to the crime. This is remarkably close to an admission that no such evidence in fact existed—only that it "could have."

70.

Despite the fact there was no arguable probable cause, Inv. Gore still took out a warrant that caused the arrest of Carter and is subsequent incarceration.

71.

Like in the Zimmerman and Brown case, the Gore case had sparse facts that constituted the arrest warrant, no positive identification was established before warrant was applied for and issued. Additionally, Inv. Gore and Officer Cox are the same Investigator and police officer on the Zimmerman case. The same type of procedures and practices occurred which led to misidentification of suspects. This practice and custom resulted in the incarceration of three innocent citizens. Inv. Gore supervisors were on constructive notice of this incident, the Brown incident and the Zimmerman incident. Upon information and belief, the arrests of Plaintiff, Lisa Brown, and Brandon Carter without any arguable probable cause were not isolated incidents, but part of a larger policy, practice and/or custom of the City of Rome of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity.

## COUNT I

**FEDERAL UNCONSTITUTIONAL SEARCH, SEIZURE AND FALSE ARREST IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BROUGHT PURSUANT TO 42 U.S.C. § 1983**

*(Against City of Rome and RPD Defendants)*

72.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as if set forth fully herein.

## UNREASONABLE SEARCH OF PLAINTIFF

73.

On April 4, 2013, at the time of Plaintiff's arrest, Parton searched Plaintiff's person and/or at his express instruction and order, caused Plaintiff's person to be searched.

74.

Parton exercised his authority as a police officer to effect a search of Plaintiff's person and clothing at the time of his arrest.

75.

Parton searched and/or caused Plaintiff to be searched without probable cause or arguable probable cause. Defendants Sisson, Cox and Taylor contributed to the illegal search of Plaintiff by participating in the events and investigation leading up to the search, by encouraging the search of Plaintiff, and by failing to intervene to prevent the search of Plaintiff.

76.

The search of Plaintiff, including the forcible and unconsented searching of the contents of his pockets, was unreasonable.

77.

The search and arrest of Plaintiff was not lawful.

78.

At the time of the search, seizure and arrest of Plaintiff, Defendants Sisson, Cox, Taylor and Parton had no objective and reasonable basis to suspect that Plaintiff had committed, was committing, or was about to commit any criminal offense.

79.

Defendants Sisson, Cox, Taylor and Parton acted with reckless, deliberate and callous indifference to the constitutionally protected rights of Plaintiff.

## UNREASONABLE SEIZURE AND FALSE ARREST OF PLAINTIFF

80.

Based on the information available to Defendants Sisson, Cox, Taylor and Parton, the seizure and arrest of Plaintiff's person on April 4, 2013 constituted an unreasonable seizure and false arrest under the Fourth and Fourteenth Amendments to the United States Constitution.

81.

Based on all of the information available to Defendants Sisson, Cox, Taylor and Parton, there was no probable cause or arguable probable cause to believe that Plaintiff had committed, was committing, or was about to commit any criminal offense.

82.

Defendants Sisson, Cox, Taylor and Parton exercised their authority as police officers to effect the seizure and false arrest of Plaintiff.

83.

The seizure and arrest of Plaintiff was excessive, unreasonable, and unlawful.

84.

The seizure and arrest of Plaintiff was unreasonable and unlawful because, among other things, Defendants Sisson, Cox, Taylor and Parton, based on the information available to them, had no probable cause or arguable probable cause to arrest Plaintiff. More specifically, Defendants Sisson, Cox, Taylor and Parton knew that the Correct Suspect had only one leg and knew that the identities of Plaintiff and the Correct Suspect did not match.

85.

Defendants Sisson, Cox, Taylor and Parton intended to arrest and confine Plaintiff and committed acts that resulted in his confinement and prosecution. Defendants Sisson, Cox, Taylor and Parton all contributed to Plaintiff's seizure, arrest, confinement and prosecution by participating in the events and investigation leading up to his arrest, by encouraging his arrest and by failing to intervene to prevent his arrest and confinement.

86.

At all times during his confinement, Plaintiff was aware of his confinement, Plaintiff was not free to leave, and Plaintiff reasonably did not believe that he was free to leave.

87.

Defendants Sisson, Cox, Taylor and Parton had a duty to intervene when the violations of Plaintiff's constitutional rights took place in order to protect Plaintiff, but Defendants failed or refused to do so, and they, therefore, are directly and personally liable for their nonfeasance under 42 U.S.C. § 1983.

88.

By failing in all respects to do any meaningful comparison of the video and photograph of Plaintiff, failing to have any meaningful communication about the issue of identity, all the time knowing that Plaintiff would be arrested on incorrect information, Defendants Sisson, Cox, Taylor and Parton acted with reckless, deliberate and callous indifference to the constitutionally protected rights of Plaintiff.

89.

It was clearly established on April 4, 2013 that searching, detaining, seizing and arresting Plaintiff without comparing the video and photos and without communicating about the issue of the suspect's identity when certain information about the investigation was unknown would violate Plaintiff's clearly-established constitutional rights. Defendants Sisson, Cox, Taylor and Parton had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the search, seizure and arrest of Plaintiff was legal.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

90.

As a direct and proximate consequence and result of the acts of Defendants the City of Rome, Sisson, Cox, Taylor and Parton, Plaintiff suffered economic damages, lost his public housing he held for three years and his SSI benefits, was deprived of his liberty for a substantial period of time, suffered much anxiety and distress over the separation from her family and friends, and much discomfort and embarrassment, her reputation was impaired, and she lost much time from her home and the companionship and care of her family and friends.

At all relevant times herein, Defendant City of Rome, acting through its Rome Police, RPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of

such rights.

Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

The constitutional abuses and violations by Defendant City of Rome, through the actions of its Police Department and Defendants Sisson and Cox were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Rome, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants

91.

As a result of the foregoing, Plaintiff is entitled to damages.

## COUNT II

**FALSE AND MALICIOUS PROSECUTION AND FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BROUGHT PURSUANT TO 42 U.S.C. § 1983**

*(Against All Defendants)*
92.

- 33 -

Plaintiff incorporates by reference each and every allegation contained in paragraphs 1-71 of this Complaint as if set forth fully herein.

93.

Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Defendants Sisson, Cox, Taylor and Parton were required to take appropriate and sufficient steps to eliminate doubts concerning Plaintiff's identity before arresting and prosecuting him.

94.

Sufficient information about Plaintiff's identity was available to Defendants Sisson, Cox, Taylor and Parton at or near the time of Plaintiff's arrest to suggest he was not the correct suspect—perhaps, most noticeably, that he had both of his legs.

95.

Defendants Sisson, Cox, Taylor and Parton intentionally and with deliberate indifference disregarded or dismissed vital information and facts that would have eliminated Plaintiff as a suspect.

96.

Defendants Sisson, Cox, Taylor and Parton s intentionally and with deliberate indifference and without justification dismissed Plaintiff's version of events without any investigation.

**DEFENDANTS CITY OF ROME, SISSON, COX, TAYLOR AND PARTON**

97.

Defendants Sisson, Cox, Taylor and Parton intentionally and without justification dismissed important discrepancies in the identities of Plaintiff and Correct Suspect that would have been evident with a simple comparison of the video of the drug buy and the photo of Plaintiff.

98.

Defendants Sisson, Cox, Taylor and Parton failed to compare the video and photo evidence, failed to interview critical witnesses to the transaction at issue (including the CI), and failed to talk directly with each other about crucial facts surrounding identity.

99.

Defendants Sisson, Cox, Taylor and Parton failed to have the CI attempt to identify the Correct Suspect.

100.

Defendants Sisson, Cox, Taylor and Parton failures to take any steps to properly identify Plaintiff before labeling him as the sole suspect and seeking his arrest reflected a deliberate indifference to his constitutional rights and was objectively unreasonable.

101.

At the time of his arrest, Plaintiff had a clearly established right against false arrest and false imprisonment without due process.

102.

A reasonable officer in the position of Defendants Sisson, Cox, Taylor and Parton would have known that his or her conduct could violate Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution not to be falsely arrested or falsely imprisoned.

103.

A reasonably well-trained officer would have at least attempted to compare the video and the photograph of Plaintiff to confirm the suspect's true identity before arresting Plaintiff.

104.

A reasonable officer would have been sufficiently concerned by the discrepancies between the identities of Plaintiff and the Correct Suspect to make further investigation as to whether Plaintiff had, in fact, committed the alleged crime, particularly since Defendants Sisson, Cox, and Taylor were all present for and watched the crime committed and knew it was clearly videotaped.   Defendants

Sisson, Cox, Taylor and Parton all knew a videotape existed that could potentially rule Plaintiff out as a suspect, but then failed to even review it before deciding to arrest and prosecute Plaintiff.

105.

A reasonable officer would not solely rely on Defendant Cox's unsupported and unjustified identification of Plaintiff as the sole suspect based entirely on Cox's general description of Plaintiff.

106.

A reasonable officer in the position of Defendants Sisson, Cox, Taylor and Parton would be unlikely, in the face of Plaintiff's assertions of mistaken identity and innocence, to arrest and book Plaintiff into jail on the basis that he committed the crime without first taking steps to verify he had, in fact, done so.

107.

Based on the information readily available, no reasonable officer in the position of Defendants Sisson, Cox, Taylor and Parton could have believed probable cause or arguable probable cause existed to arrest Plaintiff.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of of encouraging and rewarding officers for making arrests and closing cases without

properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

At all relevant times herein, Defendant City of Rome, acting through its Rome Police, RPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of such rights.

Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

The constitutional abuses and violations by Defendant City of Rome, through the actions of its Police Department and Defendants Sisson and Cox were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Rome, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants

**FLOYD COUNTY DEFENDANTS**
*JOHN BROOKS, CHRISTOPHER PARTON, CATHY TAYLOR*
108.

Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, the County Defendants were required to properly investigate Plaintiff's and his family's claims of innocence based on the information they had available to them.

109.

After being falsely arrested and booked into the Jail, Plaintiff told the County Defendants several times that he was innocent of all of the charges, had done nothing wrong, and asked them to investigate why he was being held.

110.

The County Defendants intentionally and deliberately and with malice failed to inquire into Plaintiff's claims of innocence.

111.

Instead of investigating Plaintiff's claims of innocence, the County Defendants maliciously and callous and deliberate indifference intentionally ignored Plaintiff's pleas knowing he could be innocent and that he was being unlawfully detained.

112.

The County Defendants' detention of Plaintiff after his false arrest constituted a violation of his constitutional right to be free from unlawful and false imprisonment. Plaintiff had a constitutional right to be free from imprisonment where the circumstances and facts under the County Defendants' consideration demonstrated, or should have demonstrated, Plaintiff was innocent and being falsely imprisoned.

113.

Plaintiff continued to protest his detention on the basis that he was not the one who had committed the crime, but until his release from the Jail on October 8, 2013, no line-up, show-up or other form of identification was performed, requested or offered, and the County Defendants never afforded Plaintiff an opportunity to explain or prove his innocence.

114.

As a direct and proximate consequence and result of the acts of all of the Defendants, Plaintiff suffered economic damages, lost his public housing he held for three years and his SSI benefits, was deprived of his liberty for a substantial period of time, suffered physical injuries and emotional anxiety and distress over the separation from his family and friends, and much discomfort and embarrassment, his reputation was impaired, and he lost much time from his home and the companionship and care of his family and friends.

115.

Based on the foregoing, Plaintiff is entitled to damages.

## COUNT III
### DENIAL OF RIGHTS GUARANTEED UNDER THE GEORGIA CONSTITUTION, ART. I, SEC. 1, ¶¶ I, VII, XIII, AND XXVIII

### (*Against All Defendants*)

116.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as if set forth fully herein.

117.

The Georgia Constitution secures certain rights for Plaintiff, a citizen of the State of Georgia, including the right not to be deprived of her liberty or property except by due process of law, guaranteed by Article I, Section I, Paragraph I, of said

- 41 -

Constitution; the right to the impartial and complete equal protection of the law, guaranteed by; the right to the full enjoyment of the rights, privileges, and immunities due to her as a citizen of the United States and of the State of Georgia, as protected by Article I, Section I, Paragraph VII of said Constitution; the right to be secure in her person and affects against unreasonable and warrantless searches and seizures, except upon probable cause supported by oath or affirmation, as secured by Article I, Section I, Paragraph XIII of said Constitution; and her rights reserved or retained under Article I, Section I, Paragraph XXVIII of said Constitution.

118.

Through their wrongful, deliberately indifferent and malicious acts set forth above, all performed under color of law, Defendants deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the State of Georgia, and particularly his right not to be deprived of her liberty or property except by due process of law, guaranteed by Article I, Section I, Paragraph I, of said Constitution; his right to the full enjoyment of the rights, privileges, and immunities due to her as a citizen of the United States and of the State of Georgia, as protected by Article I, Section I, Paragraph VII of said Constitution; his right to be secure in his person and affects against unreasonable and warrantless searches and seizures, except upon probable cause supported by oath or affirmation, as secured by Article

I, Section I, Paragraph XIII of said Constitution; and his rights reserved or retained under Article I, Section I, Paragraph XXVIII of said Constitution.

## 119.

In doing the wrongful, deliberately indifferent and malicious acts and things above complained of, the defendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive her of rights guaranteed to her under the Constitution of the State of Georgia, particularly those hereinabove enumerated.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

## 120.

As a direct and proximate consequence and result of the acts of all of the Defendants, Plaintiff suffered economic damages, was deprived of his liberty for a substantial period of time, suffered physical injuries and emotional anxiety and distress over the separation from his family and friends, and much discomfort and embarrassment, his reputation was impaired, and he lost much time from his home and the companionship and care of his family and friends.

121.

As a result of the foregoing, Plaintiff is entitled to damages.

**COUNT IV**
**FALSE ARREST PURSUANT TO O.C.G.A. § 51-7-1, ET SEQ.**
**GEORGIA LAW CLAIM**
*(Against Defendants City of Rome, Sisson, Cox, Taylor and Parton)*

122.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 as if set forth fully herein.

123.

Plaintiff's arrest was undertaken and performed without probable cause or arguable probable cause because the above acts of Defendants Sisson, Cox, Taylor and Parton and circumstances are such as to satisfy a reasonable person that Defendants Sisson, Cox, Taylor and Parton had no grounds for proceeding but their desire to injure Plaintiff.

124.

Based on the information available to Defendants Sisson, Cox, Taylor and Parton at the time of Plaintiff's arrest, Plaintiff's arrest was made maliciously and with deliberate indifference to Plaintiff's constitutional rights.

125.

Plaintiff's arrest constituted a wanton abuse of power under color of authority.

127.

False arrest is a tort for which an action will lie in damages under O.C.G.A. § 51-7-1.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practiceand/or custom of of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

128.

As a direct and proximate consequence and result of the acts of Defendants City of Rome, Sisson, Cox, Taylor and Parton, Plaintiff suffered economic damages, lost his public housing he held for three years and his SSI benefits, was deprived of his liberty for a substantial period of time, suffered physical injuries and emotional anxiety and distress over the separation from his family and friends, and much discomfort and embarrassment, his reputation was impaired, and he lost much time from his home and the companionship and care of his family and friends.

At all relevant times herein, Defendant City of Rome, acting through its Rome Police, RPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of such rights.

Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

The constitutional abuses and violations by Defendant City of Rome, through the actions of its Police Department and Defendants Sisson and Cox were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Rome, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants

129.

As a result of the foregoing, Plaintiff is entitled to damages.

## COUNT V
### MALICIOUS PROSECUTION PURSUANT TO O.C.G.A. § 51-7-40, ET SEQ.
### GEORGIA LAW CLAIM
*(Against Defendants City of Rome, Sisson, Cox, Taylor and Parton)*

130.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as if set forth fully herein.

131.

Defendants Sisson, Cox, Taylor and Parton subjected Plaintiff, an innocent person, to search, seizure, arrest and criminal prosecution for criminal offenses that she did not commit.

132.

Defendants Sisson, Cox, Taylor and Parton formally accused Plaintiff of committing criminal offenses that he did not commit.

133.

Defendants Sisson, Cox, Taylor and Parton's accusation and prosecution of Plaintiff was undertaken and performed under the color of law.

134.

The criminal prosecution of Plaintiff terminated in favor of Plaintiff and confirmed his innocence.

135.

Defendants Sisson, Cox, Taylor and Parton unreasonably failed to properly and fully investigate before initiating the prosecution of Plaintiff.

136.

Defendants Sisson, Cox, Taylor and Parton maliciously instituted and maintained the criminal proceedings against Plaintiff knowing that he was innocent. Defendants Sisson, Cox, Taylor and Parton's actions constituted a deliberate indifference to Plaintiff's constitutional rights.

137.

Defendants Sisson, Cox, Taylor and Parton's criminal prosecution of Plaintiff was undertaken with a total lack of probable cause for the proceedings and a total lack of good faith on the part of Defendants Sisson, Cox, Taylor and Parton.

138.

Defendants Sisson, Cox, Taylor and Parton continued with their criminal prosecution of Plaintiff even after knowing facts that suggested he was innocent.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

139.

As a direct and proximate consequence and result of the acts of all of Defendants City of Rome, Sisson, Cox, Taylor and Parton, Plaintiff suffered economic damages, lost his public housing he held for three years and his SSI benefits, was deprived of his liberty for a substantial period of time, suffered physical injuries and emotional anxiety and distress over the separation from his family and friends, and much discomfort and embarrassment, his reputation was impaired, and he lost much time from his home and the companionship and care of his family and friends.

At all relevant times herein, Defendant City of Rome, acting through its Rome Police, RPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of

such rights.

Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

The constitutional abuses and violations by Defendant City of Rome, through the actions of its Police Department and Defendants Sisson and Cox were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Rome, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants

140.

As a result of the foregoing, Plaintiff is entitled to damages.

**COUNT VI**
**FALSE IMPRISONMENT PURSUANT TO O.C.G.A. § 51-7-20, ET SEQ.**
**GEORGIA LAW**
(*Against All Defendants*)

141.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as if set forth fully herein.

142.

Defendants' actions caused Plaintiff to be arrested and unlawfully incarcerated in the Floyd County Jail for over six (6) months when he was innocent of the crimes alleged against him.

143.

By unlawfully and falsely causing Plaintiff to be arrested and incarcerated for more than six (6) months, Defendants denied Plaintiff of his personal liberty, and are liable for false imprisonment, a tort for which an action for damages will lie under O.C.G.A. § 51-7-20.

145.

Defendants' actions in falsely imprisoning Plaintiff, and by intentionally and maliciously failing to investigate his claims of innocence even when Defendants knew Plaintiff was innocent constituted a deliberate indifference to Plaintiff's constitutional rights.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

At all relevant times herein, Defendant City of Rome, acting through its Rome Police, RPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of such rights.

Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

The constitutional abuses and violations by Defendant City of Rome, through the actions of its Police Department and Defendants Sisson and Cox were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant City of Rome, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to

adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants

146.

As a direct and proximate consequence and result of the acts of all of Defendants, Plaintiff suffered economic damages, lost his public housing he held for three years and his SSI benefits, was deprived of his liberty for a substantial period of time, suffered physical injuries and emotional anxiety and distress over the separation from his family and friends, and much discomfort and embarrassment, his reputation was impaired, and he lost much time from his home and the companionship and care of his family and friends.

147.

As a result of the foregoing, Plaintiff is entitled to damages.

## COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### GEORGIA LAW
### (*Against All Defendants*)

148.

Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as if set forth fully herein.

149.

The acts of Defendants, as set forth herein, were intentional and reckless and so atrocious, extreme and outrageous so as to not be tolerated in a civilized community.

150.

The acts of Defendants, as set forth herein, were so outrageous in character, and so extreme, as to go beyond all possible bounds of decency.

151.

The acts of Defendants, as set forth herein, were intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

Plaintiff was arrested without any arguable probable cause as a direct and proximate cause of the City of Rome's policy, practice and/or custom of of encouraging and rewarding officers for making arrests and closing cases without properly and fully investigating the issue of identity, which policy, practice or custom was a moving force in the violations of Plaintiff's constitutional rights.

152.

As a proximate result of Defendants' actions and the consequences proximately caused by them, Plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been physically and emotionally injured in mind and body.

153.

Defendants are liable to Plaintiff for their intentional infliction of emotional distress.

154.

The acts of Defendants, as set forth herein, showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences; therefore, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT IX
### ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-6-11
### GEORGIA LAW
### (ALL DEFENDANTS)

155.

Plaintiff incorporates by reference as if set forth fully herein each and every allegation contained in paragraphs 1-71 of this Complaint.

- 55 -

156.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

157.

As a result of Defendants' actions, Plaintiff is entitled to his expenses of litigation including, but not limited to, his reasonable attorney's fees in having to bring this action.

**WHEREFORE**, for and upon the foregoing, the Plaintiff prays that:

1. That process issue directing the Defendants to answer this Complaint as required by law;

2. The liability of the Defendants, in fair and just compensation for the damages incurred by Plaintiff, be tried by a jury of twelve (12) competent and impartial jurors;

3. The Court enter judgment in favor of Plaintiff and against Defendants and award Plaintiff all actual damages, including damages for the loss of Plaintiff's property, loss of benefits, physical pain and injury, and mental anguish and emotional distress;

4. The Court enter judgment in favor of Plaintiff and against Defendants and award Plaintiff nominal damages for violations of Plaintiff's constitutional rights;

5. The Court award Plaintiff punitive damages to the extent permitted by law because the actions of Defendants in deliberately and maliciously arresting, prosecuting and incarcerating Plaintiff show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to the consequences of their actions;

6. Award attorney's fees to Plaintiff in accordance with 42 U.S.C. § 1988;

7. Award attorney's fees to Plaintiff in accordance with O.C.G.A. § 13-6-11; and

8. Award such other relief as to this Court is deemed just and proper.


Respectfully submitted this _28th__ day of March, 2016.


**CALDWELL AND HUYNH, LLC**

_/s/STEPHAN B. CALDWELL___
STEPHAN B. CALDWELL
Georgia Bar No. 208406
5 Concourse Parkway
Suite 3000
Atlanta, Georgia 30328
Telephone: (770) 392-3319
Facsimile: (770) 392-3303
Email: scaldwell@chgalaw.com
*Counsel for Plaintiff, Patrick Zimmerman*


**THE MERCHANT LAW FIRM P.C.**


__/s/JOHN B. MERCHANT____
JOHN B. MERCHANT, III
Georgia Bar No. 533511
ASHLEIGH B. MERCHANT
Georgia Bar No. 040474
701 Whitlock Avenue, S.W.
Suite, J-43, First Floor
Marietta, Georgia 30064
Telephone: (404) 510-9936
Facsimile: (404) 592-4614
E-mail: *john@merchantlawfirmpc.com*
*Counsel for Plaintiff, Patrick Zimmerman*